KAREN P. HEWITT
United States Attorney
CARLOS ARGUELLO
Assistant U.S. Attorney
California State Bar No. 157162
Federal Office Building
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 557-6252
Facsimile: (619) 235-2757

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08cr0341-BTM |
|---|---|---|
| Plaintiff, | ) | Date: August 20, 2008 |
| | ) | Time: 10:00 a.m. |
| v. | ) | |
| FIDEL HERNANDEZ-BELLO, | ) | UNITED STATES' MOTIONS IN LIMINE TO: |
| Defendant. | ) | (1) ADMIT A-FILE DOCUMENTS; |
| | ) | (2) PERMIT A-FILE CUSTODIAN; |
| | ) | (3) ADMIT RULE 609 EVIDENCE; AND |
| | ) | (4) ORDER RECIPROCAL DISCOVERY. |
| | ) | TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Carlos Arguello, Assistant United States Attorney, and hereby files its motions in limine. These motions are based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

///
///
///
///
///
///

**I**

**STATEMENT OF FACTS**

**A.    THE ATTEMPTED ENTRY**

On Wednesday, January 30, 2008, at approximately 4:15 a.m., an individual named Jacob Shawn Estilow, age 29, applied for admission into the United States at the vehicle primary inspection area at the San Ysidro Port of Entry. Estilow was the driver and apparent sole occupant of a Chevrolet Silverado pickup truck. United States Bureau of Customs and Border Protection Senior Officer John Tobin was working at primary lane number nineteen and spoke with Estilow.

Officer Tobin asked Estilow routine questions. Estilow stated that: 1) he was a United States citizen; 2) he was headed to San Diego; 3) he had owned the pickup truck for one year; and 4) he had nothing to declare.

Officer Tobin then inspected the pickup truck. The officer opened the driver side door and found two persons hiding behind Estilow in the crew cab area. At that point, Officer Tobin radioed for assistance.

Customs and Border Protection Officer Ramon Cortez responded and found a total of three individuals, one of whom was later identified as Defendant, lying on the floor hidden beneath the rear seat covers. Officer Cortez then drove the pickup truck to the secondary inspection area and removed all three persons from the cargo area. Further inspection of the pickup truck revealed that the rear bench seat had been previously removed, and the rear bench upholstery was used to conceal the three individuals who were later determined to be illegal aliens.

Shortly thereafter, officers conducted immigration computer queries and learned that Defendant was a previously deported criminal alien. Defendant, age 36, was referred to the Port Enforcement Team and later arrested.

**B.    DEFENDANT'S POST-ARREST STATEMENTS**

At approximately 9:00 a.m., Customs and Border Protection Enforcement Officer Sergio Barron, as witnessed by Enforcement Officer Roger Quintana, Jr., advised Defendant of his <u>Miranda</u> rights in the Spanish language. Defendant acknowledged his rights and elected to invoke his right to remain silent.

Further records checks confirmed Defendant had not applied for or received permission from the United States Attorney General or the Secretary of the Department of Homeland Security to attempt reentry into the United States.

**C.    DRIVER'S STATEMENTS**

Officers also interviewed Estilow, the driver of the pickup truck. Estilow admitted he drove the pickup knowing it contained illegal aliens. He stated he had been instructed to drive the aliens to Palomar Street in Chula Vista. He expected $1,000 as payment for his smuggling effort. Officers processed Estilow administratively and released him.

**D.    DEFENDANT'S CRIMINAL AND IMMIGRATION HISTORY**

Defendant has the following felony conviction:

February 3, 2005: California Penal Code section 288(a) (lewd act upon a child under 14); Orange County; 365 days county jail, 5 years probation.

Defendant has the following immigration history:

November 7, 2005: removed from Nogales; pursuant to an immigration judge's order.

## II

## ARGUMENT

**A.    A-FILE DOCUMENTS ARE ADMISSIBLE**

**1.    A-File Documents are Admissible as Public Records or Business Records**

The United States intends to offer documents from the Immigration and Naturalization Service's (now under Department of Homeland Security) "A File" that correspond to Defendant's name and A-number in order to establish Defendant's alienage, prior deportation, and that he was subsequently attempted entry into the United States without having sought or obtained authorization from the Attorney General (or Secretary of the Department of Homeland Security). The documents are self-authenticating "public records," or, alternatively, "business records." See Fed. R. Evid. 803(6), 803(8)(B).

The Ninth Circuit has addressed the admissibility of A-File documents in United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997). There, Loyola-Dominguez appealed his Section 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial

1 certain records from the illegal immigrant's "A File."  See id. at 1317.  The district court had admitted:
2 (1) a warrant of deportation; (2) a prior warrant for the defendant's arrest; (3) a prior deportation order;
3 and (4) a prior warrant of deportation.  Loyola-Dominguez argued that admission of the documents
4 violated the rule against hearsay, and denied him his Sixth Amendment right to confront witnesses.  The
5 Ninth Circuit rejected his argument, holding that the documents were properly admitted as public
6 records.  See id. at 1318.  The Court first noted that documents from a defendant's immigration file,
7 although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and
8 do not implicate the concerns animating the law enforcement exception to the public records exception."
9 Id. (quoting United States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)).  The Court also
10 held that such documents are self-authenticating and, therefore, do not require an independent
11 foundation.  See id.  Thus, A-file documents are generally admissible.

12 **B.    TESTIMONY OF AN A-FILE CUSTODIAN IS  PERMISSIBLE**

13 A Government witness is prepared to testify regarding the documents in Defendant's A-file and
14 provide some context and meaning to them at trial.  The A-File witness will merely testify about
15 standard record keeping and administrative procedures of the Immigration authorities.  An adequate
16 foundation will be established for his testimony at trial.  Further, the Ninth Circuit has previously held
17 that many observations, even by law enforcement personnel, which are common enough yet still require
18 a limited amount of expertise, can properly be characterized as lay witness opinion.  See United States
19 v. Von Willie, 59 F.2d 922, 929 (9th Cir. 1995); United States v. Loyola-Dominguez, 125 F.3d 1315,
20 1317 (agent "served as the conduit through which the government introduced documents from INS'
21 Alien Registry File".)  Accordingly, this Court should allow testimony regarding the standardized
22 procedures employed in immigration proceedings and immigration record keeping.  This testimony will
23 be presented by someone with direct experience and knowledge of these procedures, and is admissible.
24 In the event the Court considers this witness as an expert, the United States has already provided written
25 notice to Defendant.

26 ///
27 ///
28 ///

///

## C.     ADMISSION OF 609 EVIDENCE

The United States will seek to cross-examine Defendant with regard to his criminal history pursuant to Fed. R. Evid. 609.

Fed. R. Evid. 609(a) provides in pertinent part:

> For purposes of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, <u>and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused</u>; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

Fed. R. Evid. 609(a) (emphasis added). The Ninth Circuit has listed five factors that the district court should balance in making the determination required by Rule 609. <u>United States v. Browne</u>, 829 F.2d 760, 762-63 (9th Cir. 1987). Specifically, the court must consider: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility. <u>Id.</u> at 762-63. <u>See also</u> <u>United States v. Hursh</u>, 217 F.3d 761 (9th Cir. 2000).

The Ninth Circuit applied these factors in <u>United States v. Perkins</u>, and concluded that "the admission under Rule 609 of a bank robbery conviction in a bank robbery trial is not an abuse of discretion when the conviction serves a proper impeachment purpose, such as when the defendant's testimony and credibility are central to the case." <u>United States v. Perkins</u>, 937 F.2d 1397, 1406 (9th Cir. 1990); <u>see</u> <u>also</u> <u>Browne</u>, 829 F.2d at 764 (holding that the district court did not abuse its discretion in admitting impeachment evidence of defendant's prior conviction for bank robbery during a bank robbery trial); <u>United States v. Charmley</u>, 764 F.2d 675, 677 (9th Cir. 1985) (upholding trial court's admission of prior convictions for both bank robbery and forgery in bank robbery trial); <u>United States v. Oaxaca</u>, 569 F.2d 518, 527 (9th Cir. 1978) (allowing impeachment with evidence of prior burglary and bank robbery).

///

1    In this case, if the Defendant testifies and disputes at least one of the elements of the crime, his credibility will become squarely at issue. If Defendant chooses to testify at trial, the United States should not be prevented from demonstrating Defendant's lack of trustworthiness by utilizing his 2005 prior conviction for lewd act upon a child under 14. The United States, of course, suggests the nature of such a conviction be sanitized and the jury be informed Defendant was convicted of "a felony."

**D.    MOTION FOR RECIPROCAL DISCOVERY**

The United States hereby requests defendant to deliver all materials to which the United States may be entitled under Fed.R.Crim.P. 16(b) and 26.2.

### III

### CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant the United States' motions in limine and motion for reciprocal discovery.

Dated: August 4, 2008

                                        Respectfully submitted,

                                        KAREN P. HEWITT
                                        United States Attorney

                                        CARLOS ARGUELLO
                                        Assistant U.S. Attorney